UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| STEVEN McKENNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:24-cv-236-REW-MAS |
| v. | ) | No. 5:24-cv-261-REW-MAS |
| | ) | |
| KROGER LIMITED PARTNERSHIP I | ) | OPINION & ORDER |
| *et al.*, | ) | |
| | ) | |
| Defendants. | | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court, across two largely mirroring cases, are Plaintiff Steven McKenney's motions to remand, consolidate, stay, and join/substitute parties. *See* No. 5:24-cv-236 at DE 12 (First Motion to Remand, Consolidate, and Join/Substitute), DE 13 (First Motion to Stay); No. 5:24-cv-261 at DE 10 (Second Motion to Remand, Consolidate, and Join/Substitute), DE 11 (Second Motion to Stay). Also before the Court is Defendants' motion to dismiss for failure to state a claim. *See* No. 24-cv-261 at DE 7 (Motion to Dismiss). All motions are fully briefed and ripe for ruling. *See* No. 24-cv-236 at DE 14, DE 17, DE 20, DE 21; No. 24-cv-261 at DE 14, DE 15, DE 18, DE 20. For the reasons set forth below, the Court **GRANTS** the motions to consolidate, **DENIES** the motions to remand, join, dismiss, and stay, and **DISMISSES** Defendants Hall, Borders, Ignacio, and Stover as fraudulently joined. Kroger will also have a duty to clarify its jurisdictional allegations.

I.  **BACKGROUND**

McKenney, a Kentucky citizen,[1] alleges in both cases that on September 10, 2023, he fell while shopping at the Kroger Marketplace in Georgetown, Kentucky, resulting in significant bodily

---

[1] Often referred to by the parties as a "resident." Residence is not citizenship, *see Kaiser v. Loomis*, 391 F.2d 1007, 1009 (6th Cir. 1968), but other allegations do sufficiently touch on the key concept. Counsel should take care on jurisdictional requisites and verbiage.

1

injuries. McKenney filed the first of his two complaints (now federal case No. 5:24-cv-236) in Scott Circuit Court on July 8, 2024, against Kroger, Sedgwick Claims Management Services (Kroger's claims adjustor), Kewanza Spivey (a Sedgwick employee), and two individuals—Mike Borders and Terry Hall—who were both allegedly managers at the Georgetown Kroger on the day of the incident. *See* No. 24-cv-236, DE 1-1 ¶¶ 3–12, at 4–5 (Complaint No. 1). The Complaint specifically alleges that Borders and Hall were employed by the Georgetown Kroger on September 10, 2023, and that the "Kroger Defendants" (*i.e.*, they and the entity)

> failed to exercise ordinary care to maintain the premises of the Store in a reasonably safe condition for the use of its invitees, including the Plaintiff[;] failed to exercise ordinary care to supervise and oversee the maintenance, condition, and safety of the Store[;] and failed to see and ensure that the premises were safe, free from hazards and defects, properly maintained, and that any and all dangerous conditions were protected or warned against, causing the Plaintiff to fall on the floor of the Store and suffer severe physical injuries[.]

No. 24-cv-236, DE 1-1 ¶ 14, at 5; *accord* No. 24-cv-261, DE 1-1 ¶ 18, at 4. The Complaint additionally alleges that the managers "failed to follow their policies and procedures[;] were improper in their hiring, training, supervising, and retention of Kroger employees[;]" and "knew, or . . . should have known, that [Kroger]'s employees were incompetent and unfit to perform the jobs that they were hired to perform and that the performance of the jobs involved and directly caused the risk of harm to Plaintiff." No. 24-cv-236, DE 1-1 ¶ 22, at 6; *see* No. 24-cv-261, DE 1-1 ¶ 26, at 6.[2]

On September 3, 2024, Defendants removed the primary case to this Court, arguing diversity jurisdiction under 28 U.S.C. §§ 1441 and 1446. Specifically, Defendants posited that Borders's and Hall's citizenship should not be considered for purposes of diversity because those two defendants were fraudulently joined. *See* No. 24-cv-236, DE 1 (Notice of Removal No. 1). Two days after this removal, McKenney filed the second lawsuit in Scott Circuit Court (now federal Case No. 5:24-cv-

---

[2] In Complaint No. 2, McKenney further alleges that Defendants failed to do these things "before, during, and after the Fall." *See* No. 24-cv-261, DE 1-1 ¶¶ 25–26, 28–29, at 6. This modification does not, in the Court's view, alter the analysis, which the parties treated without differentiation.

261). *See* No. 24-cv-261, DE 1-1 at 1–11 (Complaint No. 2). This subsequent lawsuit was largely identical to the first, with the only exception being that Borders and Hall were removed as defendants and replaced with five new alleged store managers: Joe Ignacio, Jarad Stover, and three fictitious "John Does."[3] *See id.* Defendants proceeded to remove this second lawsuit as well, using the same fraudulent joinder arguments against the new manager-defendants. *See* No. 24-cv-261, DE 1 (Notice of Removal No. 2).

McKenney filed the present motions to consolidate, remand, and join/substitute additional parties on October 2, 2024. *See* No. 24-cv-236 at DE 12; No. 24-cv-261 at DE 10. Specifically, the motions (which are functionally identical across the two cases) seek to (1) consolidate cases 5:24-cv-236 and 5:24-cv-261, (2) join or substitute as parties, as a prospective ruling, it seems, "the individuals who Defendant Kroger identifies as its managers," and (3) remand the actions back to Scott Circuit Court for lack of subject matter jurisdiction. Defendants filed a separate motion to dismiss the No. 24-cv-261 action as a duplicative claim to No. 24-cv-236. *See* No. 24-cv-261 at DE 7. And finally, there are pending motions to stay proceedings in both cases. *See* No. 24-cv-236 at DE 13; No. 24-cv-261 at DE 11. It is no hot take to call the procedural history irregular.

II.  **MOTION TO CONSOLIDATE**

McKenney moves unopposed to consolidate the two cases at issue here (No. 5:24-cv-236 and No. 5:24-cv-261). "If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions[.]" FED. R. CIV. P. 42(a)(2). "Whether cases involving the same factual and legal questions should be consolidated for trial is a matter within the discretion of the trial court." *Cantrell v. GAF Co.*, 999 F.2d 1007 (6th Cir. 1993) (citations omitted). When deciding whether to consolidate cases that involve common questions of law or fact, the trial court must

---

[3] The Complaint identifies the John Does as (1) Kroger Manager, (2) Kroger Co-Manager, and (3) Kroger Assistant Manager.

consider and make reference to the following factors:

> [W]hether the specific risk of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden of parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple trial alternatives.

*Id.* at 1011 (citing *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492 (11th Cir. 1985)). "Care must be taken that consolidation does not result in unavoidable prejudice or unfair advantage." *Id*.

Here, the parties are in harmony on the propriety of consolidation. *See* No. 24-cv-236, DE 12 at 9–10 ("Consolidation of the two proceedings is warranted in this case [because] both actions involve the same factual and legal issues. . . . Therefore, . . . Plaintiff requests that the actions be consolidated[.]"); DE 14 at 7–8 ("Kroger and Sedgwick have no objection to Plaintiff's Motion to Consolidate . . . . Plaintiff has filed two identical actions, asserting identical claims, against nearly identical parties, arising from an identical set of facts. Kroger and Sedgwick agree that consolidation is appropriate . . . ."). The motion to consolidate is thus well taken and justified under the commonality and efficiency principles of Rule 42. Accordingly, the Court **CONSOLIDATES** Case No. 5:24-cv-261 with Case No. 5:24-cv-236 under the most recent case number, for administrative purposes. Future filings shall use that number.

### III.  MOTION TO JOIN OR SUBSTITUTE

McKenney next moves the Court to order the "joinder or substitution of the individuals who Defendant Kroger identifies as its managers[.]" No. 24-cv-236, DE 12 at 10. In support of this request, McKenney invokes 28 U.S.C. § 1447(e), which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." McKenney further discusses the four factors articulated by the Sixth Circuit for determining the propriety of joinder under § 1447(e). *See Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F.

4

App'x 218 (6th Cir. 2016).  The cart may not precede the horse.

McKenney's request is defective for multiple reasons.  First, as Defendants note, § 1447(e) does not itself provide a vehicle for facilitating the joinder of a party; instead, such a procedure must be initiated pursuant to a motion to amend the pleadings under Rule 15—a step McKenney has not taken here.  Just as problematically, McKenney does not provide the identities of any individuals he wishes joined and instead seeks to anticipatorily add an indefinite number of unnamed parties "who Defendant Kroger identifies as its managers."  DE 12 at 10.  This the Court will not endorse.  If McKenney finds a basis on which to seek joinder of a known potential party, he may make a proper motion at that time.  The Court will not judge in advance the legitimacy of endeavoring to add any individual not formally addressed in a filing with the Court.  Accordingly, the Court **DENIES** the motion to join or substitute parties.

## IV.    MOTION TO REMAND[4]

The Court next addresses McKenney's motion(s) to remand for lack of subject matter jurisdiction. Plaintiff argues that remand is required because (a) the individually named manager-defendants (Borders, Hall, Ignacio, and Stover) destroy diversity by virtue of their shared Kentucky citizenship with McKenney, and (b) Defendants did not timely file their notice of removal in case No. 24-cv-236.

### A.  Untimely Filing

McKenney first argues that Defendants did not file the notice of removal in Case No. 24-cv-236 within the statutorily mandated window provided by 28 § 1446(b)(1).  *See* No. 24-cv-236, DE 12 at 14–15.  The statute generally requires a notice of removal to be filed "within 30 days after the

---

[4] The Court agrees that it applies the jurisdictional statutes strictly, that the removing party has the burden, and that doubts about jurisdiction should result in remand.  *See Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006).  Those truths do not mean remand in every case, of course.  The decision hinges on the merits of the removal scenario presented.

5

receipt . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). However, "if the case [as] stated by the initial pleading is not removable," then the 30-day clock does not start to run until the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). Here, Defendants argue that because McKenney's Complaint did not specify the amount in controversy, removal did not become ascertainable until August 2, 2023, when "Plaintiff's counsel stated a settlement demand of $200,000, $150,000 of which was for settlement of Plaintiff's claims against Kroger." No. 24-cv-236, DE 14 at 11. Accounting for weekends and holidays—as contemplated by both the Federal and Local Rules—Defendants thus contend that they properly filed the notice within the statutory window on September 3, 2023. *See id.* at 11–12.

McKenney, without any support or true analysis, claims that Defendants' 30-day clock "started to run as soon as [Defendants] were served with the Complaint on July 12, 2024." DE 20 at 11. However, the statute and caselaw are clear that the 30-day window does not begin until it becomes evident that the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1446(c)(3); *Forest Creek Townhomes, LLC v. Carroll Prop. Mgmt., LLC*, 695 F. App'x 908, 912 (6th Cir. 2017) ("[T]he thirty-day period for removal begins to run when the initial pleading or a subsequent paper first provides '*solid and unambiguous* information that the case is removable.'") (emphasis added) (quoting *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 364 (6th Cir. 2015)); *Mozee v. Dugger*, 616 F. Supp. 2d 672, 673 (W.D. Ky. 2009) (holding same in context of Kentucky removal). On this specific record: The Complaint here, DE 1-1 in 24-cv-236, makes no quantified monetary claim and offers no facts about injury, scope of harm, or Plaintiff himself (*e.g.*, his age or work/earning status) sufficient to notify about the matter in controversy or plausibly assess the inclusion of punitive damages. Therefore, the amount in controversy did not become clear until August 2nd, when

6

McKenney requested a settlement of $200,000 from Defendants (and a specified amount from Kroger). Thus, this is the day that Defendants' 30-day window began to run.

Undeterred by law or fact, McKenney further argues that, even assuming the clock did not begin to run until August 2nd, Defendants untimely filed the removal notice 32 days later on September 3rd. As Defendants point out, however, September 1st (the 30th day from August 2nd) was a Sunday, and September 2nd was Labor Day. The Federal Rules of Civil Procedure state that when "computing any time period . . . in a[] statute that does not specify a method of computing time[,] . . . if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." FED. R. CIV. P. 6(a)(1)(C); *see also* Local Rule 6.2 (putting forth same rule). Thus, September 1st (a Sunday) and September 2nd (Labor Day, a legal holiday) are properly excluded from the 30-day window here, giving Defendants until September 3rd to file the notice of removal. The caselaw unambiguously supports this application of Rule 6(a)(1)(C). *See, e.g.*, *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 566 (6th Cir. 2015) ("If . . . the 30-day [removal] window opened [October 24, 2013], then it closed on November 23, a Saturday. Under Fed. R. Civ. P. 6(a)(1)(C), the deadline would be the following Monday, November 25[.]"); *3940 Olympic Blvd, LLC v. 3940 Olympic Blvd KY, LLC*, No. 2:23-cv-45-DLB, 2023 WL 6536194, at *2 n.2 (E.D. Ky. May 11, 2023) ("Thirty days from March 2, 2023 is April 1, 2023. However, that is a weekend. Therefore, the Defendants had until Monday, April 3, 2023 to file their Notice of Removal.").

McKenney attempts to invoke cases purportedly showing that Rule 6(a)(1)(C) does not apply to §1446. However, these cited authorities are unpersuasive at best and directly contradictory to his position at worst. First, McKenney cites *May v. Johnson Controls, Inc.*, 440 F. Supp. 2d 879 (W.D.

7

Tenn. 2006),[5] stating that in that case, "remand was granted after removal was filed on day 31, which was a Sunday, and remand granted without any allowance for weekend extension." DE 20 at 12. McKenney's description of this case, however, is flat-out wrong: It is true that the defendant there filed a notice of removal on May 5, 2006, which was "one day after the [30-day] statutory deadline for removal." *May*, 440 F. Supp. 2d at 880. However, May 5, 2006 (the 31st day) was a Friday, not a Sunday as McKenney inexplicably contends,[6] and nowhere does the opinion contain any discussion about the effect of weekends, holidays, or Rule 6(a)(1)(C) on the 30-day window.

McKenney likewise cites *Nessel ex rel. People of Mich. v. Enbridge Energy, LP*, 104 F.4th 958 (6th Cir. 2024), as a case that purportedly supports his weekend-inclusive position. However, McKenney is once again blatantly incorrect, as *Nessel* expressly states that "[t]he Attorney General served Enbridge with the complaint on July 12, 2019, so, under § 1446(b)(1), Enbridge needed to file its notice of removal by August 12, 2019 [pursuant to] Fed. R. Civ. P. 6(a)(1)(C)." *Id.* at 964. August 12, 2019 was a Monday, which fell 31 days after July 12, 2019—*i.e.*, the 30th day would have been a Sunday, and the Sixth Circuit directly cited Rule 6(a)(1)(C) to confirm that defendants had until the following day, due to the intervening weekend, to file the notice of removal.

Thus, with McKenney offering no valid support for his position, the Court finds that Defendants filed a timely notice of removal. The Court expects accurate citation and summation when lawyers rely on cases.

### B. Fraudulent Joinder

McKenney next argues that remand is proper due to a lack of diversity jurisdiction stemming from the non-diverse citizenship of Hall, Borders, Ignacio, and Stover. Conversely, Defendants

---

[5] In his brief, McKenney incorrectly cites to 440 F.2d 879 instead of 440 F. Supp. 2d 879. *See* No. 24-cv-236, DE 20 at 12.

[6] *See May 2006 Calendar*, CALENDAR-365, https://www.calendar-365.com/calendar/2006/May.html (last visited May 2, 2025).

8

argue that the citizenship of these manager-defendants is irrelevant for determining diversity because Plaintiff fraudulently joined each one.

"When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.,* 176 F.3d 904, 907 (6th Cir. 1999)). Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Id.* (quoting *Coyne*, 183 F.3d at 493).

"A defendant is fraudulently joined if it is 'clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . .'" *Id.* at 432–33 (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). The relevant inquiry is thus whether there is "a colorable basis for predicting that a plaintiff may recover against [a defendant]." *Coyne*, 183 F.3d at 493. The removing party bears the "heavy burden" of establishing fraudulent joinder. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489–90 (6th Cir. 2013); *see Casias*, 695 F.3d at 433 (quoting *Alexander*, 13 F.3d at 949). If a claim against a defendant "has even a 'glimmer of hope' then any charge of fraudulent joinder fails, and the Court must remand the case to state court for want of subject-matter jurisdiction." *Ashley v. Wal-Mart Stores East, LP*, No. 6:20-cv-106-CHB, 2020 WL 7646972, at *2 (E.D. Ky. Dec. 23, 2020) (quoting *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014)). "The plaintiff's actual motive is irrelevant to the fraudulent-joinder inquiry." *Clark v. Lowe's Home Ctrs., LLC*, No. 6:19-cv-114-REW, 2019 WL 5092941, at *1 (E.D. Ky. Oct. 11, 2019) (alteration cleaned up) (quoting *Freitas v. McKesson Corp. (In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.)*, 889 F. Supp. 2d 931, 936–37 (E.D. Ky. 2012)). All doubts concerning the propriety of removal must be resolved in favor of remand. *See Eastman*, 438 F.3d at 549–50; *Coyne,* 183 F.3d at 493.

9

When evaluating whether joinder was fraudulent, the Court applies "a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias*, 695 F.3d at 433 (citing *Walker v. Philip Morris USA, Inc.,* 443 F. App'x. 946, 952–54 (6th Cir. 2011)). In assessing the arguments, the Court may, as warranted, "pierce the pleadings" and "consider summary judgment evidence, such as affidavits presented by the parties, . . . for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Id.* (quoting *Walker*, 443 F. App'x at 952–54). When piercing the pleadings, the Court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non-removing party." *Coyne*, 183 F.3d at 493 (quoting *Alexander*, 13 F.3d at 949).

Defendants argue that McKenney cannot maintain a colorable claim against the four named managers because none of them was employed at the Georgetown Kroger on the date of the fall (and therefore none could have created the hazardous conditions or maintained requisite control over the premises). *See* No. 24-cv-236, DE 14-6 (Lutson Affidavit) (confirming Kroger's employment records show that none of Borders, Hall, Ignacio, or Stover was employed at the store on September 10, 2023). Indeed, the record, by affidavit, supports that Borders died in 2015, that Hall last worked at the store in January 2021, that Stover separated from Kroger in 2020, and that Ignacio ended any role at the Georgetown Kroger "before his retirement from Kroger on August 10, 2023." *See id.*

McKenney, for his part, attempts to support the inclusion of these defendants by offering unauthenticated screenshots of LinkedIn, Twitter, Facebook, and Better Business Bureau webpages allegedly showing that the four individuals were employed at the store around the time of the fall. *See* DE 12-3 (BBB page listing Borders as the Georgetown store's manager); DE 12-4 (Borders LinkedIn profile listing current position as "Store Manager at Kroger Company" in Georgetown); DE 12-5 (Hall LinkedIn profile listing similar); DE 12-6 (Ignacio LinkedIn); DE 12-9 (Stover Twitter). McKenney further argues that "the managers, whether or not they were at the store on the

10

date at issue, have potential liability" stemming from pre-September 10 improper hiring, supervision, training, retention, and allowance of dangerous conditions to occur. *See* DE 20 at 14.

Even under the forgiving fraudulent joinder standard, the Court rejects McKenney's premises and the joinder of these defendants. McKenney essentially advocates for a holding in which any person under the label manager (presumably, at any time, even in the past) is a properly joined party in a premises liability case. That is not the law. While Kentucky recognizes possible manager liability (based on the pluralities cited by both parties in *Grubb v. Smith*, 523 S.W.3d 409 (Ky. 2017)), there plainly is a requirement of actual control over the premises or control and/or remedial power with respect to the danger presented. *See Clark*, 2019 WL 5092941, at *3–5 (providing detailed discussion of *Grubb* and manager liability in the context of fraudulent joinder). A label is inadequate. *Grubb*'s requirements, consistent with both pluralities, are not present here in the Complaint(s) or record before the Court.

True, district courts largely agree that Kentucky's lenient notice-pleading standard applies in the context of fraudulent joinder, which is more forgiving than the federal standard.[7] *See, e.g., Hagyard-Davidson-McGee Assocs., PLLC v. Fed. Ins. Co.*, No. 5:20-cv-171-JMH, 2021 WL 4130504, at *4 (E.D. Ky. Sept. 9, 2021) (collecting cases and stating that "[a]s a practical matter, it would 'make little sense' to apply federal pleading standards because the test for fraudulent joinder is whether 'a reasonable basis exists for predicting that the plaintiff's claims against the non-diverse defendant could succeed under *state* law'") (quoting *Freitas*, 889 F. Supp. 2d at 940); *Combs v. ICG Hazard, LLC*, 934 F. Supp. 2d 915, 923 (E.D. Ky. 2013) ("As several recent decisions of this Court

---

[7] Kentucky law requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." KY. R. CIV. P. 8.01(1)(a). In applying this standard, Kentucky courts "still follow[] the old notice-pleading regime." *Williams v. Altman, McGuire, McClellan & Crum, P.S.C.*, No. 7:12-cv-131-ART, 2013 WL 28378, at *3 (E.D. Ky. Jan. 2, 2013). Thus, dismissal is only proper if "it appears the pleading party would not be entitled to relief under any set of facts which could be proved." *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (quoting *Pari-Mutuel Clerks' Union of Ky., Loc. 541 v. Ky. Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977)).

. . . have recognized, the Kentucky pleading rules apply, and Defendants' reliance on *Twombly* and *Iqbal* is therefore misplaced.").

Here, however, McKenney fails even to give notice of a valid claim: He does not identify the type or mechanism of harm, does not state how or why he fell, and does not attribute the generic defect to any particular act. Even in a notice pleading context, McKenney's failure to characterize the fall event in some way (Was the danger permanent, emergent, transitory, structural, environmental, ephemeral, fugitive? Did McKenney slip, trip, or suffer the fall through a different type of cause?) signals lack of adequate notice and an ineffectual theory. Further, and as the most glaring problem, it is obvious that McKenney believes he may sue any person ever and at any time wearing the manager title at the store. His pleading efforts show the belief—he named anyone he could identify on the internet as a prior Kroger manager, and he now seeks to prospectively join anyone discovery shows to have been a manager. This is not valid practice.[8]

McKenney alleges the managers were in their roles at "all relevant times," but the only date stated in the Complaint is the fall date of September 10, 2023. As noted before, not one of the named individual defendants was a manager proximate to the September fall: Per the verified proof, Borders died in 2015, Stover has not been employed by Kroger in any capacity since 2020, and Hall has not worked at the Georgetown Kroger since January 2021. *See* No. 24-cv-236, DE 14-6 at 2. That leaves only Defendant Ignacio, who ended his Kroger employment at least one month before the fall. *See id.* He denies being manager on the date in question. *See* No. 24-cv-261, DE 1-2 ¶ 3, at 1 (Ignacio Answer); *id.* at 3–4 (Fifth Defense).

Could Ignacio (if employed in early August of 2023) be on the hook for a September fall? Well, it would be impossible for Ignacio to have had any control or remedial power in September,

---

[8] Interestingly, for all of McKenney's whinging about discovery compliance, what he sought to identify was the manager(s) on duty on the very day and employees working at the time (within 3 hours) of the fall. He has pivoted to a much broader theory in trying to brighten the hopes of his managerial claims.

12

given that he left employment in August. The claim, under *Grubb*, has no glimmer of hope under Kentucky law.

McKenney's last redoubt is negligent hiring. "Under Kentucky law, the elements of negligent hiring and retention are: (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) that the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998)). The theory, one supposes, is that Ignacio negligently hired an employee in or before August and that placement or retention created dangerous risk and then loss in September. The Court rejects this, for several reasons. First, Kroger, not a cadre of managers, is the employer of its employees in this scenario. McKenney cites to no Kentucky cases imposing or suggesting imposition of individual liability on a manager for the propriety of hiring decisions. Again, McKenney's theory is not that he has facts indicating negligence by Ignacio or any other particular manager; rather, by being in the category of manager, McKenney contends he may join the roster, presume negligence in hiring/retention, and sort it all out in discovery. That is just not so; even notice pleading must feature allegations that fairly alert the defendant to the claim, and the generic approach McKenney advocates does not square with Kentucky substantive or procedural law.

Additionally, and as further dimming the claim, Ignacio again was gone from Kroger a month before the fall. How would Ignacio have placement or retention powers, as to employees at the store on the date in question when an unspecified danger arose, when he had been gone from the site for a month? The Court is aware of no authority for holding a prior manager individually liable for claims premised on the hiring decisions of that manager's former employer. Kroger has the burden, but McKenney, who has brought two suits and filed two remand motions, cannot be mute when the Court

13

is straining in the dark for a glimmer of litigation hope.

What McKenney has done is try to throw darts, through internet sleuthing, and hit the manager(s) employed by Kroger at the time of the fall. For whatever reasons, McKenney did not effectively secure the information through investigation or timely discovery, leading to several errant listings. The Court will not sanction that approach by holding in the litigation persons against whom there is no colorable claim under Kentucky law.

The conclusion: The Court finds the individual putative managers (Borders, Hall, Ignacio, and Stover) fraudulently joined. Accordingly, it **DENIES** the motions to remand and **DISMISSES** the four named manager-defendants **without prejudice** from this case. The federal litigation will continue.

## V. MOTION TO STAY

McKenney moved to stay proceedings "pending resolution of [his] motion to consolidate actions, motion to join and substitute defendants and to remand, and motion to remand." *See* No. 24-cv-236, DE 13; No. 24-cv-261, DE 11. Given that the Court has now resolved all pending motions, the need for a stay is now moot. Thus, the Court **DENIES** the motions to stay, and the matter shall proceed to discovery in the normal processes under the referral to the Magistrate Judge.

## VI. KROGER CITIZENSHIP

Finally, the Court directs Kroger—which holds itself out as a limited partnership—to supplement its removal papers, per 28 § 1653, by properly alleging its citizenship. Kroger states that it is "a foreign limited partnership organized in the State of Ohio and with its principal office in Ohio." *See* No. 24-cv-236, DE 1 ¶ 5, at 2. However, "[f]or purposes of determining diversity jurisdiction, a limited partnership is deemed to be a citizen of every state where its general and limited partners reside." *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010) (emphasis omitted) (quoting *Hooper v. Wolfe*, 396 F.3d 744, 748 (6th Cir. 2005)). **No later than May 9, 2025**,

14

Kroger shall file a supplement to identify those persons/entities and the citizenship of each.

VII. **CONCLUSION**

For the reasons outlined above, the Court:

1. **GRANTS** McKenney's motions to consolidate (No. 24-cv-236 at DE 12; No. 24-cv-261 at DE 10). The cases shall be consolidated under the most recent case number (24-cv-261).

2. **DENIES** McKenney's motions to join or substitute parties (No. 24-cv-236 at DE 12; No. 24-cv-261 at DE 10).

3. **DENIES** McKenney's motions to remand (No. 24-cv-236 at DE 12; No. 24-cv-261 at DE 10) and **DISMISSES** Defendants Borders, Hall, Ignacio, and Stover **without prejudice**. Given the dismissal of the fraudulently joined parties and the consolidation of the two cases, the Court further **DENIES as moot** Defendants' motion to dismiss the duplicative case (No. 24-cv-261 at DE 7). The Complaint in the last filed case shall be the operative pleading, though as pared by this Order.

4. **DENIES** McKenney's motions to stay proceedings (No. 24-cv-236 at DE 13; No. 24-cv-261 at DE 11).

5. **ORDERS** Kroger to supplement its jurisdictional allegations by **no later than May 9, 2025**.

This the 5th day of May, 2025.



Signed By:
*Robert E. Wier*
**United States District Judge**